CASE No. 1051.

STATE v. COLLINS.

1. Where the superintendent and the house surgeon of a hospital referred to
   contemporary records of the institution simply to refresh their memory,
   but were thus enabled to testify from their own recollection to the facts
   there stated, there was no error in receiving such testimony without the
   production in open court of the records so referred to.  This rule obtains
   in criminal as well as in civil cases.  Authorities reviewed.
2. Where testimony in a criminal case is withdrawn by the state's attorney
   upon the objection of the defendant, it is as if the testimony had not been
   admitted.

Before WALLACE, J., Charleston, November, 1880.

This was an indictment for the murder of Peter Broughton,
by stabbing, charged to have been committed by the defendant,
Cæsar Collins.  The wound was given June 7th, 1880, in
Charleston county, and the deceased died in the city hospital in
the city of Charleston on July 20th, 1880.

The exceptions allege errors of the Circuit judge in certain
rulings upon testimony.  So much of the testimony as is affected
by these exceptions is thus stated in the brief.

Thomas E. Newton.—Am superintendent of city hospital,
and my duty to receive patients; I don't recollect that I re-
ceived Peter Broughton, but, on referring to the records, believe
that I did, but am ready to swear that he was admitted on June
14th, 1880; he was cut in chest; he remained there some time

and died July 20th; Dr. King was house physician in charge of the surgical department in which that patient was; I have refreshed my memory from a book in the hospital called the general register, and from the surgical register and my copy-press letter-book; one of these books is in the handwriting of the house physician; the entry in my book is in my handwriting, and the copy in the copy-press book is a copy of my handwriting; I keep the general hospital register; it is the first regular record; the entries are not always in my handwriting, but they are in this case; this record refreshed my memory as to details; I wish it to be understood that I can know a thing without remembering it; after looking at the book then I remember it; his death is recorded in the general register, which I keep, and in the medical and surgical register, which is kept by the house physician and the house surgeon; I know of the man's death of my own knowledge; I cannot be so sure about the dates without referring to those books; I know positively about his being admitted and treated in the hospital; I remember having to attend to his treatment; I remember his dying, and I know I had to attend to his funeral after the coroner got through; I remember those facts independent of these records. [Mr. Lee, the counsel for the defendant, objected to so much of the testimony of Mr. Newton as was given by means of refreshing his memory from the hospital records, one of which was in his own handwriting. The court overruled the objection and Mr. Lee excepted.]

Dr. Walter King.—Am house surgeon to the city hospital, and was in June and July last; I remember a patient named Peter Broughton; I did not remember this morning when he was admitted, but on looking at my record I saw that he was admitted June 14th. [Counsel for defence objected to this question and answer. Objection overruled and exception taken.]

Friday Watson.—I saw Peter to his house the morning after he was cut. Question by solicitor. What did he say? A. He said Collins cut me. [Mr. Lee objected to this question and answer. The solicitor stated that he would withdraw the question.] Q. Did he show you anything? A. He showed me his wound and said: "Look how Collins cut me." Q. What be-

came of Broughton ? *A.* That is all I know of him. [Mr. Lee stated that he objected to the testimony given by Friday Watson relating to the conversation had with Broughton at his house.]

These were all state witnesses.

The defendant was convicted. He appealed to this court upon the three exceptions stated in the opinion.

*Mr. S. J. Lee,* for appellant.

*Mr. Solicitor Jervey,* contra.

July 12th, 1881. The opinion of the court was delivered by

McIVER, A. J. This was an indictment for murder, in which the appellant was charged with having inflicted a mortal wound on one Peter Broughton on June 7th, 1880, from which death ensued on July 20th following. The wound was inflicted near a country store in the county of Charleston, and the deceased was removed, a few days afterwards, to the city hospital in Charleston, where, it was alleged, he died from the effects of the wound on the day above mentioned. All the testimony taken at the trial is set out in the " case," but we propose to refer to only so much of it as will be necessary for a proper understanding of the grounds of appeal. The appellant having been convicted, moved for a new trial on the ground set forth in his notice of appeal, and, upon the refusal of this motion, gave due notice of appeal upon the following grounds :

" 1. Because the court erred in admitting the testimony of T. E. Newton, a witness for the state, about matters of which he had no knowledge, except by means of refreshing his memory from the records of the city hospital, which said records were not produced in court, and no opportunity afforded defendant's counsel to examine them.

" 2. Because the court erred in admitting the testimony of Dr. King, a witness for the state, to facts of which he had no knowledge, except that which appeared in the records of the city hospital, which records were not proved to be in the said witness' handwriting, and said records were not produced in court, and no opportunity afforded defendant's counsel to examine them.

" 3. Because the court erred in admitting as evidence the declarations of Peter Broughton, the alleged deceased, made to Friday Watson, a witness for the state, on the day after the altercation when said Peter Broughton was not in a dying condition, and said declarations were not made in the presence of the defendant."

The fourth ground of appeal having been very properly abandoned, need not be set out here.

The questions raised by the first and second grounds of appeal involve the consideration of the rule as to a witness being allowed to refresh his memory by reference to written documents. In this respect the rules of evidence are the same in criminal as in civil cases. *State* v. *Rawls*, 2 *N. & McC.* 331. The rule is thus stated in 1 *Stark. on Ev.* 128 : "If a witness has made a memorandum of facts, he may refresh his memory by referring to it; and if, by that means, he obtains a recollection of the facts themselves, as distinct from the memorandum, his statement is evidence ; but if he has no knowledge or recollection of the fact except that he perused it in a book or paper, the original book or paper must be produced, and he cannot give evidence of the facts. It is not essential that the memorandum should have been cotemporary with the fact. It seems to be sufficient if it has been made by the witness, or by another with his privity, at a time when the facts were fresh in the recollection of the witness, and that the reading such memorandum restores the recollection of the fact which had faded in the memory."

In 2 *Russ. on Crimes* 622, the rule is laid down as follows : " A witness, to assist his memory, may use a written entry, if it were made by himself shortly after the occurrence of the fact to which it relates; but if he cannot speak to the fact from recollection any further than as finding it entered in a book or paper, such book or paper ought to be produced, and if not evidence, the testimony of the witness amounts to nothing."

In 1 *Greenl. on Ev.*, § 436, in speaking of the rule upon this subject, it is said that a witness " is permitted to refresh and assist his memory by the use of a written instrument, memorandum or entry in a book. It does not seem to be necessary that the writing should have been made by the witness himself, nor that it should be an original writing, provided, after inspecting

it, he can speak to the facts from his own recollection." And, again, in Section 437, this author divides the cases in which writings may be referred to by witnesses to refresh or assist their memories, into three classes: "*First.* Where the writing is used only for the purpose of assisting the memory of the witness. In this case it does not seem necessary that the writing should be produced in court, though its absence may afford matter of observation to the jury, for the witness at last testifies from his own recollection. *Second.* Where the witness recollects having seen the writing before, and though he has now no independent recollection of the facts mentioned in it, yet he remembers that, at the time he saw it, he knew the contents to be correct. In this case the writing itself must be produced in court in order that the other party may cross-examine. * * * *Third.* Where the writing in question neither is recognized by the witness, as one which he remembers to have before seen, nor awakens his memory to the recollection of anything contained in it; but, nevertheless, knowing the writing to be genuine, his mind is so convinced that he is on that ground enabled to swear positively to the fact," one of the illustrations given being where a witness called to prove the execution of a deed is unable to recall any recollection whatever of the fact, and yet from the fact of seeing his genuine signature as an attesting witness, he is permitted to prove the execution of the deed. In Section 438, it is said that no precise rule has been established as to the time when the writing thus resorted to should be made, but that it ought at least to have been made before such a period of time has elapsed as to render it probable that the memory of the witness might have become deficient. The cases upon the subject from our own state which have been referred to in the argument, will next be considered.

In *State* v. *Rawls, supra,* the rule was laid down in the following language: "Where a person who was a witness to a particular transaction had made a memorandum at the time of certain facts for the purpose of perpetuating the memory of them, and could at any subsequent period swear that he made the entry at the time for that purpose, and that he knew from that memorandum that the facts did exist, it would be good evidence, although

he might not retain a distinct recollection of the facts themselves." In this case it does not distinctly appear that the memorandum was produced in court, though it is a fair inference from what is stated that it was read from by the witness while on the stand. In *O'Neale* v. *Walton*, 1 *Rich.* 234, an unsuccessful effort was made to extend the rule thus laid down so as to permit a memorandum made two weeks after the occurrence to which it related, not by the witnesses themselves, though signed by them, but by an interested party, to be read in evidence. No objection was made to the use of the paper merely for the purpose of refreshing the memory of the witness, but when they stated that, independently of the paper itself, they had no distinct recollection of the facts which it contained, objection was made and sustained by the Court of Appeals, principally, as it seems, upon the ground that the paper in question was prepared by one of the parties in interest, and not by the witnesses themselves; and also, that it was prepared as long as two weeks after the occurrence which it purported to record. It is a mistake to say, as was urged in the argument here, that this case practically overruled the case of State *v.* Rawls. On the contrary, the authority of that case is distinctly recognized, and the court only says that the principle there laid down is not to be extended so as to cover a case like that of O'Neale *v.* Walton, where the memorandum relied upon is not made by the witness, but by an interested party weeks after the event.

In *Ballard* v. *Ballard*, 5 *Rich.* 495, a witness was offered to prove a demand and refusal in an action of trover, and being unable to say what reply the defendant made when the demand was made, without reading from a written memorandum, which, he said, " he believed stated the truth—he at first thought it was made on the day of the demand—but after he went home he afterwards said. he did not think it was made on that day, but that it was made on the next day, or not long after," the plaintiff offered the memorandum in evidence, but it was not admitted. One of the questions before the Court of Appeals was as to the propriety of excluding this memorandum. The court, while recognizing the rule as laid down in State *v.* Rawls, and approving the declaration made in O'Neale *v.* Walton, that this rule should

not be extended as there proposed, held that the memorandum was properly excluded, and seemed to lay stress upon the fact that the memorandum "was not prepared at least until the next day, *if then, after a conference.*" It will be observed that there was no question raised in this case as to whether the witness could, after refreshing his memory by reference to the memorandum, testify to the facts therein contained, but the question was, whether the memorandum itself could be used as evidence.

In *Berry* v. *Jourdan,* 11 *Rich.* 67, the rule is recognized that a witness may be allowed to refresh and assist his memory by referring to a written instrument, memorandum or entry in a book, even though such writing may not have been made by himself, provided that after reading it he can speak to the facts from his own recollection.

The case of *Furman & Smith* v. *Peay,* 2 *Bail.* 394, cited by appellant's counsel to show the necessity for producing in court the hospital records, was a case in which an attempt was made to prove an account for goods sold by book entries, and not a case in which a written memorandum was resorted to for the purpose of refreshing the memory of a witness, and does not, therefore, apply to this case. *State* v. *Cardoza,* 11 *S. C.* 239. In such a case the entries themselves constitute the evidence of the sale and delivery of the goods, and hence the necessity for the production in court of the books containing such entries. And see, too, the recent case of *Bank* v. *Zorn,* 14 *S. C* 444.

Applying the principles deducible from the foregoing authorities to the case in hand, we do not see how the first and second grounds of appeal can be sustained. It appears that the hospital records were only resorted to by the witnesses for the purpose of refreshing their memories as to certain details, dates, &c., and there was no offer or attempt to use these records as testimony, and there was no necessity for the production in court of these records. Where a memorandum or other writing is referred to by a witness simply to refresh his memory, and it is not proposed to use such memorandum or writing as testimony, but to rely entirely upon the recollection of the witness as refreshed by such memorandum or writing, there can be no necessity for producing the same in court, for it may be, as in the case of

*State* v. *Cardoza, supra,* that the writing resorted to for that purpose is of such a character as to be altogether unintelligible to any one but the witness himself; and yet, upon the principle of the association of ideas, it may be quite sufficient to restore the recollection of a fact which had faded from the memory of the witness.

Nor do we think there is any foundation for the objection that the records used to refresh the memories of these witnesses were not made by them. As matter of fact, it seems that one of the books referred to—the general register—was kept by the witness Newton, while the other book—the surgical register—was kept by the other witness, Dr. King, and in both of the books the entries were made contemporaneously with the occurrence of the facts recorded, or at least so near the time of the occurrence of such facts as to render them practically contemporaneous. These books, as their names import, seem to contain the daily record of what occurred in the hospital, and we see no error in allowing the officers of the hospital, whose duty it was to keep these records, to refer to them for the purpose of refreshing their memories as to the facts there recorded.

As to the third ground of appeal, there seems to be some misapprehension on the part of the appellant's counsel. According to the report of the Circuit judge, as well as from what appears in the "case" as agreed upon by the parties, the testimony of Friday Watson as to the declarations of Peter Broughton, made the day after he was wounded, was *not* admitted, but, on the contrary, as soon as that witness stated what the deceased said, the appellant's counsel objected; whereupon the testimony was immediately withdrawn by the solicitor, and, as the Circuit judge says: "No ruling was made by the court, because there was no issue and nothing to decide." The Circuit judge also says that at the close of the examination of this same witness, Mr. Lee stated that he objected to the conversation at the house [that is, the conversation between the witness and deceased, in which the witness had stated what the deceased said to him.] No ruling was made, because the examination was closed. No motion to strike out was made." And we may add that there was no occasion

for such a motion, inasmuch as the objectionable testimony had already been withdrawn by the solicitor.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

SIMPSON, C. J., and McGOWAN, A. J., concurred.